**VAN COTT, BAGLEY, CORNWALL & MCCARTHY**
John A. Snow (3125) (jsnow@vancott.com)
Kelley M. Marsden (13076) (kmarsden@vancott.com)
36 South State Street, Suite 1900
Salt Lake City, Utah  84111-1478
Telephone:  (801) 532-3333
Facsimile:  (801) 534-0058

Bret W. Reich (9542) (bret.reich@kernrivergas.com)
Kern River Gas Transmission Company
2755 E. Cottonwood Parkway, Ste. 300
Salt Lake City, Utah 84121
Telephone:  (801) 937-6062
Facsimile: (801) 937-6055

*Attorneys for Kern River Gas Transmission Co.*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHEAST DIRECTIONAL DRILLING, LLC, a Minnesota limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KERN RIVER GAS TRANSMISSION COMPANY, a Texas general partnership, and BARNARD PIPELINE, INC., a Montana corporation,<br><br>Defendants. | **MEMORANDUM DECISION and ORDER GRANTING KERN RIVER GAS TRANSMISSION COMPANY'S MOTION TO DISMISS BARNARD PIPELINE, INC.'S SECOND CROSS-CLAIM**<br><br>Case No. 2:11-cv-1035-DN<br><br>Judge David Nuffer |

This matter came before the Court on October 2, 2012 for hearing on Defendant Kern River

Gas Transmission Company's ("Kern River") Motion to Dismiss Barnard Pipeline, Inc.'s Second

Cross-Claim ("Motion").[1]  Plaintiff Southeast Directional Drilling, LLC ("SEDD") was

represented by Kyle E. Hart and Theodore v. Roberts; Barnard Pipeline, Inc. ("Barnard") was

---

[1] Docket no. 37, filed April 16, 2012.

represented by R. Miles Stanislaw and Christopher R. Hogle; and Kern River was represented by John A. Snow, Kelley M. Marsden, and Bret W. Reich.  The Court carefully reviewed the pleadings and memoranda submitted by the parties, the relevant legal authority, counsel's oral arguments, and considered Barnard's objection to the proposed order.[2]  For good cause appearing, the Court hereby ORDERS, ADJUDGES AND DECREES as follows.

## STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must accept well-pleaded allegations as true and must construe them in the light most favorable to the non-moving party.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).

## SECOND CLAIM FOR RELIEF

Barnard's second claim for relief is against Kern River for indemnity.  Barnard claims that it is entitled to be indemnified by Kern River for any damages awarded to SEDD as a result of SEDD's claims against Barnard for additional costs incurred in the performance of alleged extra work.  This claim is dismissed on three separate grounds for failure to state a claim.

First, through the parties' contract, Barnard bears the risk of its subcontractors' unexpected costs, and Kern River is not liable for those additional costs.  In August 2010, Kern River and Barnard entered into the Capital Construction Agreement ("CCA"), wherein Barnard agreed to serve as the general contractor for the Apex expansion project (the "Project").  The CCA is a fixed-price, lump-sum contract.

The CCA's provisions affirm that Barnard, not Kern River, bears the risk of additional costs in completing the Project.  Kern River agreed to pay a lump sum "[a]s total consideration for satisfactory performance of the Work" under the CCA.  CCA, Part I, § 5.  Barnard accepted full responsibility for the performance of its subcontractors.  CCA, Part II, § 6(b).  The parties

_____

[2] Docket no. 85, filed January 18, 2013.

agreed in the CCA that Kern River will not allow or recognize any "claim for either additional compensation or extension of time alleging changed, concealed, or unknown conditions." CCA, Part I, § 6(g). Barnard expressly assumed the risk for additional or unexpected expenses and costs incurred by subcontractors, and Barnard cannot pass those expenses to Kern River through an indemnity claim.

Further, as a general rule, a general contractor on a fixed-price contract assumes the risk of unknown conditions and unexpected costs when it enters into the fixed price contract. *See Green Constr. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1009 (10th Cir. 1993) ("Generally, absent fraud, the party who agrees to complete construction for a fixed cost must absorb any losses resulting from unforeseen condition"). Therefore, the contractor "is not entitled to additional compensation merely because the project was more expensive due to unexpected soil [conditions]," unless the owner warrants plans and specifications. *Id*. A lump sum contract "places all of the financial risk of construction on the contractor." *Stelko Elec., Inc. v. Taylor Cmty. Sch. Bldg. Corp.*, 826 N.E.2d 152, 156 (Ind. Ct. App. 2005).

In *Frontier Foundations, Inc. v. Layton Construction Co., Inc.*, 818 P.2d 1040, 1042 (Utah Ct. App. 1991), the Utah Court of Appeals addressed this issue, noting that general contractor Layton contracted to perform the project for a stated price, and therefore, the project owner, Thiokol, could not be held liable for additional costs incurred by a subcontractor due to unexpected soils conditions, even though Thiokol had provided reports and logs concerning soils conditions. The Court held that "[i]f one agrees to do a thing possible of performance, 'he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered.'" *Id*. (quoting *Wunderlich v. State of Cal.*, 423 P.2d 545, 548 (Cal. 1967)).

In this case, both the express contractual language and the general contract provisions

dictate that Kern River cannot be liable for SEDD's overruns in costs.

Second, the express contractual disclaimers in the CCA bar Barnard's indemnity claim. The CCA precludes the indemnity claim alleged against Kern River: Kern River has no liability to Barnard related to documentation provided to Barnard, including, specifically, any geotechnical reports and any item related to sub-surface conditions, including soils.

Under Utah law, "if a contract is determined to be unambiguous, its interpretation is . . . a question of law." *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 582 (Utah App. 1990). The Court must "examin[e] the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole." *Frontier Founds. v. Layton Constr. Co.*, 818 P.2d 1040, 1042 (Utah Ct. App. 1991). "In most instances, parties are bound by the terms of their contract, which defines their respective relationship and their respective rights and obligations. *Id*. Courts uphold specific disclaimer language. *Id*.; *see also Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991) (courts generally enforce contracts, including express disclaimers of warranties); *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 163-64 (Ky. Ct. App. 1977) (express and unqualified disclaimer as to the accuracy of information means that reliance on that information is unjustified).

This case is similar to *Frontier Foundations*. In *Frontier*, Layton Construction Co., a general contractor, was sued by its subcontractor, Frontier Foundation, Inc., because Frontier encountered unexpected soil conditions (gravel and cobble) at the construction site, causing Frontier to complete its work at three times the projected expense and resulting in increases in cost to Layton and other subcontractors. *Id*. at 818 P.2d at 1041. Layton cross-claimed against Thiokol Chemical Corporation, the project owner, for Layton's liability to Frontier because of

unexpected subsurface conditions.  *Id*.  Layton used plans and specifications provided by Thiokol in preparing its bid, and Frontier based its bid upon boring logs Thiokol included in its bid specifications.  *Id*.

The bid specifications stated that the boring logs were "not a warranty of subsurface conditions" and noted that the logs were not part of the contract documents.  *Id*.  The construction contract provided that the contractor was to familiarize himself with work conditions, and that failure of the contractor to do so does not relieve him from performing the work without additional cost to Thiokol.  *Id*. at 1042.  The trial court held that, as a matter of law, Thiokol could not be liable to Layton for amounts for Frontier's additional work.  The Court gave full credence to the disclaimer language in the contract, holding that "the construction contract, read as a whole, unambiguously provides that Layton could not rely on the boring logs as representing the soil to be encountered at the construction site and, therefore Layton is not entitled to damages incurred because of differing soil conditions."  *Id*. at 1043.  A host of courts have addressed this very issue, and have found that project owners are not liable for additional costs based upon unexpected subsurface or soils conditions.[3]

The Court upholds the disclaimer language in the contract between Kern River and Barnard.  The disclaimer language of the CCA is even stronger than the disclaimer language in the contract between Layton and Thiokol.  Similar to the Layton contract, the CCA provides that

---

[3] *See Berkel & Co. Contractors, Inc. v. Providence Hosp*. 454 So.2d 496, 505 (Ala. 1984) (holding that because of an effective disclaimer, a subcontractor could not recover from an owner for negligence in preparation of soils reports or any negligent misrepresentation); *Empire Paving, Inc. v. City of Milford*, 747 A.2d 1063, 1067-68 (Conn. App. 2000) (court upholds disclaimer of warranties as to subsurface or other conditions, and holds that the clauses are dispositive of a claim for compensation); *Air Cooling & Energy Inc. v. Midwestern Constr. Co. of Mo., Inc.*, 602 S.W.2d 926 (Mo. App. 1980) (upholding general contract's provisions that no warranty was made as to subsurface data and holding that subcontractor could not recover extra costs for unforeseen subsurface conditions)

Barnard was "thoroughly acquainted with all conditions that may be encountered in performing the Work."  *See id.*, at 1042; *see also Green Constr. Co.*, 1 F.3d at 1009 ("When a contract contains a site inspection clause, it places a duty on the contractor to exercise professional skill in inspecting the site and estimating the cost of work").  While Layton merely required the contractor to "familiarize" himself with the work, Barnard affirmatively represented in the CCA that it "is thoroughly acquainted with all conditions that may be encountered in performing the Work."  CCA, Part II, § 6(g).

The Layton contract noted that failure of the contractor to familiarize himself did not relieve it from performing the work without additional cost to Thiokol.  The CCA, however, expressly prohibits Barnard from making a claim for additional compensation, without any reference to "familiarizing" itself with the property.  CCA, Part II, § 6(g).  The CCA also provides that Barnard is not entitled to seek additional compensation even if conditions are "changed, concealed or unknown."  *Id*.  Barnard agreed that it has taken into account "all facets of the job," including "conditions which may be encountered in performing the Work," and specifically the subsurface conditions, including soil conditions.  CCA, Part II, § 6(g).

The CCA includes additional provisions which preclude Kern River from being responsible for additional costs that result from soils conditions.  At the end of the CCA, in bold, all caps letters, the CCA provides that Kern River "expressly disclaims all warranties, express or implied, as to any documentation provided by [Kern River] in connection with [the CCA], including, but not limited to, bid documents, drawings, reports, materials, and plans and specifications."  CCA, Part II, § 6(g).  The CCA further dictates that Kern River "shall have no liability to [Barnard] whatsoever related to documentation provided by [Kern River] in connection with the work and/or this CCA, whether based on contract, tort, or otherwise,

6

including any liability or claim based on breach of contract, . . . breach of warranty, due diligence, negligence or failure to exercise due care." *Id.*

Because the terms of the CCA allocate costs and responsibilities to Barnard, Barnard cannot state an indemnification claim against Kern River for damages assessed against Barnard related to subsurface conditions.

Third, the indemnification rights in the CCA run in favor of Kern River, not Barnard. "A party's right to indemnification may arise from a contract or may be implied 'based upon the law's notion of what is fair and proper as between the parties.'" *McCarthy v. Turner Constr., Inc.*, 953 N.E.2d 794, 798 (N.Y. 2011). Utah courts interpret indemnification provisions "so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so." *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1103, 1115 (D. Utah 2005) (quoting *L.D.S. Hosp. v. Capitol Life Ins. Co.*, 795 P.2d 857, 858 (Utah 1988)).

The indemnification provisions of the CCA require Barnard to indemnify Kern River, including for suits that arise out of performance of the CCA or any work performed under the Agreement, including claims by third parties. CCA, Part II, § 19(A). There is no reciprocal provision requiring Kern River to indemnify Barnard for any reason. The CCA includes the following unambiguous statement: CONTRACTOR EXPRESSLY ASSUMES THE ENTIRE LIABILITY PURSUANT TO THIS INDEMNIFICATION PARAGRAPH FOR ANY AND ALL LIABILITIES ARISING IN FAVOR OF ANY THIRD PARTIES. CCA, Part II, § 19(A) (capitalization in original). Barnard, not Kern River, assumed all liability to third parties. This integrated contract does not leave any potential for an indemnification suit against Kern River for the liabilities arising in favor of third parties such as SEDD.

## ORDER

For the foregoing reasons, the Court GRANTS Kern River's Motion to Dismiss Barnard's Second Cross-Claim.[4] Barnard's Second Cross-Claim against Kern River is hereby DISMISSED WITH PREJUDICE.

DATED this 28th day of February, 2013.

BY THE COURT:

David Nuffer
United States District Court Judge

---

[4] Docket no. 37.